952 So.2d 575 (2007)
FLORIDA HEALTH SCIENCES CENTER, INC., d/b/a Tampa General Hospital, Appellant,
v.
John T. ELSENHEIMER and Frank Jackson, Individually and on behalf of themselves and all others similarly situated, Appellees.
Nos. 2D06-0657, 2D06-1159, 2D06-1663.
District Court of Appeal of Florida, Second District.
March 2, 2007.
*576 Edward J. Carbone and Blake J. Delaney of Buchanan Ingersoll PC, Tampa, for Appellant.
*577 Mark C. Menser of Viles & Beckman, LLC, Fort Myers, for Appellees.
Kimberly A. Ashby and Kirk Davis of Akerman Senterfitt, Orlando, for Amicus Curiae Florida Hospital Association.
SILBERMAN, Judge.
Appellees John T. Elsenheimer and Frank Jackson (the Plaintiffs) brought this action against Appellant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital (the Hospital), concerning its billing and collection practices with regard to uninsured patients. In these consolidated appeals, the Hospital challenges a nonfinal order denying its motion to transfer venue pursuant to section 47.122, Florida Statutes (2005), and two nonfinal orders granting class certification. We affirm the venue order, treat the issue regarding the first certification order as moot, reverse the second certification order, and remand for an evidentiary hearing regarding class certification.
The Plaintiffs reside in Charlotte County, Florida. On April 5, 2004, Elsenheimer was involved in a swamp buggy accident, suffering serious injury to his skull. He was transported from Charlotte County to the Hospital, which is located in Hillsborough County, for emergency treatment. Elsenheimer was uninsured but was eligible for Medicaid. Elsenheimer's father, Frank Johnson, was responsible for the medical bills his son incurred because Elsenheimer was a minor at the time of the accident. Shortly after the accident, Elsenheimer reached the age of majority. The Hospital billed approximately $110,000 for Elsenheimer's treatment and twelve-day hospital stay. The Hospital engaged in collection efforts in Charlotte County against the Plaintiffs, characterized by the Plaintiffs as "a campaign of harassment." The Hospital ultimately submitted Elsenheimer's bills to Medicaid for payment. After payment by Medicaid of a portion of the bills, the Hospital wrote off the remaining balance. The Plaintiffs made no payment to the Hospital.
The Plaintiffs filed an amended class action complaint against the Hospital,[1] and the operative pleading is the second-amended class action complaint, dated August 31, 2005. The second-amended complaint alleges claims under the Florida Consumer Collection Practices Act, sections 559.55-.785, Florida Statutes (2004). In count one, entitled "Improper Debt Collection," the Plaintiffs allege under section 559.72 that the Hospital "has attempted to collect non-existent or exaggerated debts from the Plaintiffs." In count two, entitled "Illegal Collection Practices," the Plaintiffs allege that the Hospital engaged in collection tactics intended to harass the Plaintiffs and force them to pay an alleged debt that was not owed. In count three, the Plaintiffs seek injunctive relief to compel compliance with chapter 559 and to prohibit the Hospital from attempting to collect "illegal and unauthorized charges for health care." In count four, entitled, "Equitable Relief: Disgorgement of Illegally Collected Funds," the Plaintiffs allege that the Hospital "has routinely and systematically collected exorbitant, exaggerated fees from indigent, uninsured or underinsured patients for debts that were not owed, including overcharges for services and debts covered by Medicaid or other programs." On that basis, the Plaintiffs seek an accounting and the "return of all illegally collected funds."

MOTION TO TRANSFER VENUE
In September 2005, the Hospital filed a motion to transfer venue from Charlotte *578 County to Hillsborough County pursuant to section 47.122, Florida Statutes (2005). In support of the motion, the Hospital filed an affidavit by its Director of Patient Accounts, Anthony Escobio.[2] Following a hearing, the trial court denied the motion.
We reject without discussion the Plaintiffs' contention that the Hospital waived its venue argument by engaging in discovery after the trial court denied its motion to transfer venue. We also reject the Plaintiffs' contention on appeal that the motion to transfer venue was untimely pursuant to Florida Rule of Civil Procedure 1.061. That rule addresses motions to dismiss "on the ground that a satisfactory remedy may be more conveniently sought in a jurisdiction other than Florida." Fla. R. Civ. P. 1.061(a). A motion under the rule "shall be served not later than 60 days after service of process on the moving party." Fla. R. Civ. P. 1.061(g).
In its motion, the Hospital did not seek dismissal under rule 1.061 to a jurisdiction outside of Florida. Instead, the Hospital sought a transfer of venue to another Florida county based on "the convenience of the parties or witnesses or in the interest of justice," as provided for in section 47.122.[3] Thus, rule 1.061 is not controlling because it does not apply to motions to transfer venue within Florida under section 47.122. See E.I. DuPont De Nemours & Co. v. Fuzzell, 681 So.2d 1195, 1197 (Fla. 2d DCA 1996) (acknowledging that the analysis applicable to a motion made pursuant to rule 1.061 does not apply to a motion to transfer venue within Florida pursuant to section 47.122); John Christen Corp. v. Maita, 571 So.2d 24, 25 n. 1 (Fla. 2d DCA 1990) (observing that section 47.122 contains no time limitation).
With respect to the merits of the Hospital's venue motion, the Hospital does not argue on appeal that Charlotte County is not a proper venue for this lawsuit. Rather, it contends that the trial court erred in denying its motion to transfer venue to Hillsborough County. Section 47.122 provides, "For the convenience of the parties or witnesses or in the interest of justice, any court of record may transfer any civil action to any other court of record in which it might have been brought." A trial court's decision on whether to change venue under section 47.122 is subject to an abuse of discretion standard of review. See Darby v. Atlanta Cas. Ins. Co., 752 So.2d 102, 103 (Fla. 2d DCA 2000); PricewaterhouseCoopers LLP v. Cedar Res., Inc., 761 So.2d 1131, 1133 (Fla. 2d DCA 1999).
In Darby, this court recognized that "[w]hen deciding a venue issue, a plaintiff's venue selection is not the paramount consideration; but `it is a meaningful one in assessing the convenience of the parties.'" 752 So.2d at 103 (quoting J.L.S. v. R.J.L., 708 So.2d 293, 295 (Fla. 2d DCA 1998)). With respect to the three statutory factors of convenience of the parties, convenience of the witnesses, and the interests of justice, the convenience of the witnesses is the most important factor. Morrill v. Lytle, 893 So.2d 671, 673 (Fla. 1st DCA 2005). But, "for a court to consider the convenience of the witnesses, the court must know who the witnesses are and the significance of their testimony." Hu v. Crockett, 426 So.2d 1275, 1279 (Fla. 1st DCA 1983). To overcome a plaintiff's venue choice, the defendant must submit *579 affidavits or other sworn proof. Breen v. Huntley Jiffy Stores, Inc., 610 So.2d 29, 30 (Fla. 2d DCA 1992); Eggers v. Eggers, 776 So.2d 1096, 1098 (Fla. 5th DCA 2001); Graham v. Graham, 648 So.2d 814, 815-16 (Fla. 4th DCA 1995).
The Hospital relies upon Eggers to argue that because it had filed the only sworn proof concerning venue, consisting of Escobio's affidavits, the trial court abused its discretion in denying the motion to transfer. In Eggers, the defendant submitted a sworn motion and affidavits from ten prospective witnesses in Hillsborough County. The plaintiff filed an unsworn response stating that she was eighty-seven years old and that the change in venue would be a hardship for her and her witnesses who all resided in Citrus County. The Fifth District stated that the plaintiff's unsworn response was not evidence and that the trial court had before it only evidence that Hillsborough County was the more convenient forum. 776 So.2d at 1098. The Fifth District concluded that the trial court had abused its discretion and reversed the denial of the motion to transfer venue under section 47.122. Id.
Here, the Hospital relied on Escobio's affidavits in support of its motion to transfer venue. The affidavits state that Hillsborough County is the Hospital's "residence" and that it operates its facility there; that its assets are located and its records are maintained in Hillsborough County; that its employees are based in Hillsborough County; that the overwhelming majority of the potential witnesses and the overwhelming majority of records, data, and evidence believed to be relevant to its billing and collection practices regarding Elsenheimer and other medically indigent patients who are eligible for Medicaid benefits are located in Hillsborough County; and that over 70% of members of one portion of the putative class and over 85% of the members of another portion of the putative class resided in Hillsborough County at the time of their admission to Tampa General Hospital.
Notably, although the affidavits speak broadly about potential witnesses and potentially relevant records, the affidavits are significantly less detailed than the affidavits that were submitted in Eggers. There, the defendant's sworn motion stated that venue was more appropriate in Hillsborough County because nineteen witnesses resided there. 776 So.2d at 1097. Affidavits from ten of the prospective witnesses were also filed, setting forth "the gist of the relevant knowledge of the witnesses." 776 So.2d at 1098 n. 2.
Escobio's affidavits do not identify the potential witnesses from Hillsborough County, describe their anticipated testimony, or establish the relevance of their anticipated testimony. Thus, the trial court did not know whether one or two Hillsborough County witnesses might testify for the Hospital or if there are significantly larger numbers of witnesses who might testify. The Hospital also did not apprise the court of whether each witness had different, relevant information or whether each would provide virtually identical testimony.
With respect to the Hospital's assertions regarding members of the putative class, at the time the trial court heard the venue motion the class had not yet been certified. Further, it is unclear to what extent, if any, the testimony of class members other than the named Plaintiffs would be needed for trial.
Because of the lack of specificity in the affidavits submitted by the Hospital, we cannot say that the trial court abused its discretion in denying the motion to transfer venue under section 47.122. Thus, we affirm the order denying the motion to transfer venue. We recognize, however, *580 that as new information is developed on remand, on proper motion with appropriate proof, a transfer of venue under section 47.122 may be warranted.

CLASS CERTIFICATION
The Plaintiffs filed an unsworn motion for class certification in December 2005. In the motion, the Plaintiffs allege, "on behalf of themselves and all other persons similarly situated," that the Hospital had engaged in "wrongful conduct, on a class-wide basis, in attempting to collect excessive and unlawful debt and improperly imposing a lien or interest upon property in Charlotte County." On February 13, 2006, the trial court heard the Plaintiffs' motion for class certification. No testimony was presented at the hearing, and the Plaintiffs filed no affidavits or depositions in support of their motion. The only evidence that the Plaintiffs filed was Elsenheimer's own hospital bills, the Hospital's 2004 annual report, and some news articles from the Internet. The hearing consisted primarily of argument of counsel, and the transcript of the hearing is just twenty-three pages long.
On February 24, 2006, the trial court entered a boilerplate, one-paragraph order granting class certification, which the Plaintiffs concede does not meet the requirements of Florida Rule of Civil Procedure 1.220(d). On March 2, 2006, the trial court entered a second, more detailed order granting class certification.[4] After the court entered the second order, the Hospital filed its notice of appeal of the first order. Later, the Hospital filed its notice of appeal of the second order. Because the trial court entered the second order before the Hospital appealed the first order, and because the second order superseded the first order, the issues relating to the first order are moot. We therefore confine our discussion to the second class certification order.
Although the second order contains some findings of fact, it is apparent that the trial court based the bulk of its findings on the allegations in the second amended complaint. Further, the order specifies that "certain factual averments raised in the Second Amended Complaint which were essentially uncontroverted at the hearing are taken as true for purposes of certification." One of the central allegations that the court recited in its second order was that "[t]he hospital charges incurred by the Plaintiffs were substantially (300%-400%) (allegedly) in excess of charges that would have been billed to an insured person." At the hearing, the Plaintiffs' counsel argued that this allegation was an undisputed fact. The Hospital's counsel, however, responded at the hearing that its client vehemently opposed the allegation. Counsel stated as follows:
Tampa General Hospital most assuredly does not acknowledge that it charges different amounts based on someone's insurance status. In fact, it affirmatively contends in this case and will prove if this case goes forward, that it does not. There is a single charge, two [sic] patients for a given service regardless of their insurance status.
Thus, the court's finding and the Plaintiffs' argument that the Hospital did not dispute the central allegation is incorrect.
Before certifying a class action, a trial court must conduct a rigorous analysis to determine whether the plaintiff has met the requirements of rule 1.220. Rollins, Inc. v. Butland, 951 So.2d 860, 867 *581 (Fla. 2d DCA 2006). In order to certify a class, the trial court must determine that the plaintiff has met the rule 1.220(a) requirements of numerosity, commonality, typicality, and adequacy of representation. Id. In addition, the trial court must determine that the plaintiff has met one of the subdivisions of rule 1.220(b) to certify a class. Id. Rule 1.220(d)(1) requires the trial court's order to "separately state the findings of fact and conclusions of law upon which the determination is based." Review of a trial court's order on class certification is by the abuse of discretion standard. Rollins, 951 So.2d at 867-68.
Contrary to the Plaintiffs' assertions, it is insufficient for the trial court to accept the allegations in the Plaintiffs' complaint as true for purposes of the class certification. "Although not every class certification order merits an evidentiary hearing as a predicate, the majority of class certification issues are determined after such hearings because the plaintiff bears the burden of proof, and not simply supposition, to establish that a class should be certified." Ernie Haire Ford, Inc. v. Gilley, 903 So.2d 956, 958 (Fla. 2d DCA 2005); see also Rollins, 951 So.2d at 867-68 ("There must be an evidentiary basis to support an order certifying a class when the nonmoving party contests class certification and it is not clear from the pleadings that a lawsuit qualifies for class action status."); Barton-Malow Co. v. Bauer, 627 So.2d 1233, 1235 (Fla. 2d DCA 1993) ("In most cases, if the defendants contest the plaintiffs' allegations, it will be necessary for the trial court to determine whether the facts actually support the allegations.").
The present case is similar to UGI Corp. v. Marcucilli, 939 So.2d 347 (Fla. 2d DCA 2006).[5] In UGI Corp., this court determined that the record provided no evidentiary support for the trial court's findings on class certification because the plaintiff did not present any evidence at the class certification hearing. Id. at 347. This court explained that
this was not one of those rare cases in which an evidentiary hearing was not required. Counsel for UGI informed the circuit court at the hearing that his clients contested the issue of class certification and pointed out that the putative class representative had not presented any evidence in support of his motion for class certification. At that point, the putative class representative's request for the certification of a class rested on the unsupported allegations of the class action complaint and the motion for class certification. Under these circumstances, an evidentiary hearing was required before a class could be certified, and the circuit court abused its discretion in certifying the class without first conducting such a hearing.
Id. at 347-48.
Here, the Hospital recognizes that its 2004 annual report, which the Plaintiffs filed, did provide evidence of numerosity of the class. However, the Plaintiffs failed to present evidence regarding any of the other requirements for class certification. The fact that the Plaintiffs submitted Elsenheimer's hospital bills does nothing to establish commonality or typicality. The Plaintiffs' counsel argued that the Hospital charged higher prices to uninsured patients than to insured patients for the same service. Counsel stated, "You have a *582 commonality based upon this common billing practice. Theand again it's not disputed." The Hospital did dispute this allegation, and the Plaintiffs submitted only Elsenheimer's bills as support for the allegation. The submission of one patient's bills does not prove a "common billing practice." Thus, the trial court had before it no proof on commonality. Furthermore, the submission of just Elsenheimer's hospital bills does not prove that the Plaintiff's claims are typical of any other potential class member. Thus, the trial court abused its discretion in certifying a class without evidence to establish the requirements of rule 1.220(a) and (b).[6]
Therefore, as in UGI Corp., we reverse the second class certification order and remand for an evidentiary hearing after the parties have had an opportunity to conduct discovery regarding the issue of class certification.
Affirmed in part, reversed in part, and remanded for further proceedings.
WALLACE and LaROSE, JJ., Concur.
NOTES
[1] The original complaint is not contained in the Appendix, and the amended complaint apparently was the first paper served on the Hospital in this action.
[2] In connection with an earlier motion, the Hospital had filed a different affidavit by Escobio.
[3] The Hospital also made other arguments in its motion that do not impact our analysis.
[4] For unknown reasons, the second order was not filed with the circuit court clerk until March 28, 2006.
[5] In fact, the trial court judge and the plaintiff's attorney in UGI Corp. are the same as in the present case. The trial court did not have the benefit of the UGI Corp. decision at the time that it entered the certification order now before us.
[6] We note that in its second order, the trial court certified what appears to be a rather broad class. If the Plaintiffs are able to present evidence to support class certification on remand, subclasses may be necessary, particularly in light of the different counts contained in the second-amended complaint.